Joalpe-Industria De Expositores, S.A. v. Alves, 2015 NCBC 9A (Amended 01/27/2015).

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 5697

JOALPE-INDUSTRIA DE EXPOSITORES,
SA,
    Plaintiff

    v.

MANUEL J. ALVES and NANCY S. ALVES,
    Defendants

    and

JOALPE INTERNATIONAL, INC.,
    Defendants/Third-Party
    Plaintiff

    v.

SHAHRAM MOVASSEGHI and MARIA
MOVASSEGHI,
    Third-Party Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**AMENDED
OPINION AND ORDER
ON MOTIONS FOR
SUMMARY JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, is before the Court upon Defendant Joalpe International, Inc.'s ("Joalpe U.S.") Motion for Leave to Amend Answer, Joalpe U.S.'s Motion for Partial Summary Judgment, Plaintiff Joalpe-Industria de Expositores, S.A.'s ("Joalpe S.A.") Motion for Partial Summary Judgment, and Defendants Manuel J. Alves and Nancy S. Alves' (collectively, "Defendants Alves") Motion for Partial Summary Judgment; and

THE COURT, after reviewing the motions, briefs and arguments in support and opposition thereof and other appropriate matters of record, FINDS and CONCLUDES that

the Motions should be GRANTED in part and DENIED in part, as reflected in this Opinion and Order.

> *Hodges & Coxe, P.C., by C. Wes Hodges, II, Esq., for Plaintiff.*
>
> *Wilson & Ratledge, PLLC, by Reginald B. Gillespie, Jr., Esq., for Defendants Manuel J. Alves and Nancy S. Alves.*
>
> *Fletcher, Toll & Ray, LLP, by Alan Toll, Esq., for Defendant Joalpe International, Inc.*

## PROCEDURAL BACKGROUND

1.      Joalpe S.A. initiated this suit against Defendants on December 10, 2010. Joalpe S.A. filed its Second Amended Complaint ("Complaint"), on which its claims are now based, on April 11, 2011.

2.      The Complaint states claims against Joalpe U.S. for (1) judicial dissolution of Joalpe U.S. pursuant N.C.G.S. §55-14-30, (2) appointment of a receiver pursuant to N.C.G.S. §55-14-32, (3) an accounting and inspection of records pursuant to N.C.G.S §55-16-01, (4) temporary injunctive relief – N.C.G.S. §1-485, (5) action to recover on account, and (5) declaratory judgment.  The Complaint also states claims against Defendants Alves for breach of fiduciary duty and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA").

3.      On June 13, 2011, Defendants Alves filed an Answer and Counterclaim against Joalpe S.A.  The counterclaim alleges a cause of action for defamation against Joalpe S.A.

4.      On July 5, 2011, Defendant Joalpe U.S. filed an answer to the Complaint, counterclaims against Joalpe S.A., and a third party complaint against Maria Movasseghi and Shahram Movasseghi (collectively, "Movasseghis").  Joalpe U.S.' counterclaims and third party claims appear to attempt to state claims against Joalpe S.A. and the

Movasseghis for breach of contract, breach of fiduciary duty, civil conspiracy, negligence, gross negligence, unfair and deceptive trade practices, and injunctive relief.

5. On August 17, 2011, Joalpe S.A. filed its reply to the counterclaims raised by Defendants Alves. On the same date, Joalpe S.A. filed a reply to the counterclaims raised by Joalpe U.S. and the Movasseghis filed an answer to the third party claims raised by Joalpe U.S.

6. On December 11, 2012, Joalpe U.S. filed its Motion for Partial Summary Judgment.

7. On March 8, 2013, Joalpe S.A. filed a Motion for Partial Summary Judgment and Defendants Alves filed a Motion for Summary Judgment.

8. On April 3, 2013, Defendant Joalpe U.S. filed a Motion for Leave to Amend its Answer.

9. The Motions have been briefed and are ripe for determination.[1]

THE MOTIONS BEFORE THE COURT

10. Defendant Joalpe U.S.' Motion for Partial Summary Judgment seeks summary judgment on Plaintiff Joalpe S.A.'s claim for judicial dissolution of Joalpe U.S., specifically under N.C. Gen. Stat. § 55-14-30(2)(ii) (hereafter, references to the North Carolina General Statutes will be to "G.S."). In essence, Joalpe U.S. contends that the undisputed facts establish that dissolution is appropriate because Joalpe S.A.'s reasonable expectations have been frustrated, but that Joalpe U.S. should be given the opportunity to purchase Joalpe S.A.'s shares under G.S. § 55-14-31(d). Joalpe U.S. has not moved for summary judgment on any of the other claims asserted against it.

---

[1] The Motions were argued before the Honorable John R. Jolly, Jr. The parties have consented to the undersigned ruling on the Motions based upon the briefs filed with the Court.

11.     Joalpe S.A.'s Motion for Partial Summary Judgment also seeks summary judgment on Joalpe S.A.'s claim for judicial dissolution of Joalpe U.S.  Joalpe S.A. seeks dissolution specifically under § 55-14-30(2)(iii), on the grounds that the shareholders are unable to elect directors due to shareholder deadlock. Joalpe S.A. did not allege shareholder deadlock over the election of directors as a basis for dissolution in its Complaint. In its Motion, Joalpe S.A. appears to seek dissolution on the basis of shareholder deadlock so as to thwart Joalpe U.S.' attempt to take advantage of G.S. § 55-14-31(d) to buy Joalpe S.A.'s shares, rather than have Joalpe U.S. liquidated under G.S. § 55-14-30.

12.     Defendants Alves' Motion for Summary Judgment seeks summary judgment on Joalpe S.A.'s claims against them for breach of fiduciary duty and violation of the NCUDTPA.

13.     On April 3, 2013, Joalpe U.S. filed a Motion for leave to amend its Answer. Joalpe U.S. seeks to now admit allegations in Plaintiff's Complaint that it previously denied, and that are helpful to its argument that the Court should grant dissolution of Joalpe U.S. under G.S. § 55-14-30(2)(ii) and permit it to buy Joalpe S.A.'s shares instead of liquidating Joalpe U.S.  Joalpe S.A. opposes the motion to amend.

FACTUAL BACKGROUND

The Court makes the following findings and conclusions solely for purposes of ruling on the Motions:[2]

14.     Joalpe U.S. is a North Carolina corporation specializing in producing, importing, and distributing consumer products such as store fixtures and plastic shopping baskets and carts.[3] Joalpe U.S. currently is based in Wilmington.  Joalpe U.S. was formed

---

[2] A court does not make findings of fact in ruling upon a motion for summary judgment. However, the court may summarize material facts that do not appear to be at issue and which justify the judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975).
[3] Compl. ¶¶ 2, 8; M. Alves Dep., pp. 14-35.

in the 1970s by Manuel Alves in Canada, and moved to North Carolina in the early 1990s. At all times relevant to this matter, Manuel Alves was the President of Joalpe U.S., Nancy Alves was the Secretary of Joalpe U.S., and both are Directors of Joalpe U.S.[4]

15.     Joalpe U.S. has adopted written corporate by-laws.[5]  The by-laws provide for a minimum of three directors, and annual shareholder meetings.  From 1996 to 1999, Manuel Alves, Nancy Alves, and Maria Movasseghi served as the directors of Joalpe U.S.[6] On April 7, 2004, Manuel Alves and Nancy Alves purported to reduce the number of directors to two, and to elect themselves as the only two directors of Joalpe U.S.[7]  Joalpe U.S. did not hold annual shareholder meetings from 2003 through 2012.  In December 2012, Joalpe S.A., as a shareholder of Joalpe U.S., called for a substitute annual meeting as authorized by the by-laws for the purpose of electing directors.  At the substitute meeting, the shareholders deadlocked on the slate of candidates, and no directors were elected.[8]

16.     In the mid-1980's, Manuel Alves formed a second company with his father in Portugal that became Joalpe S.A.[9]  Alves and his father expanded the business in the United States and Europe through Joalpe S.A.[10]  Manuel Alves also was the President and Chairman of the Board of Directors of Joalpe S.A. until his resignation in September 2010.

17.     In 1996, Joalpe U.S. sold 50% of its shares to Joalpe S.A., with Manuel Alves and Nancy Alves each retaining 25% of the shares.  Manuel Alves' mother, Maria Pereira ("Ms. Pereira"), and his sister, Maria Movasseghi, are the majority owners of Joalpe S.A.[11] As part of the purchase, Joalpe U.S. employed Maria's husband, Shahram Movasseghi.

---

[4] Compl. ¶¶ 8-12.
[5] M. Movasseghi Aff. (3/7/13) ¶ 8, Exh. B.
[6] Id.  ¶9.
[7] Id., Exh. D.
[8] Id. ¶¶ 11-12
[9] M. Alves Dep. pp. 26-28, 34-35.
[10] Id. pp. 34-35.
[11] M. Movasseghi Aff. (3/7/13) ¶ 4.

Manuel Alves placed Shahram in charge of the day-to-day operations of Joalpe U.S.[12] Joalpe S.A. participated in the "management and operations of Joalpe U.S." through Shahram Movasseghi.[13] Joalpe S.A. claims that it had had a substantial, reasonable and continuing expectation that Shahram would remain employed with and oversee the management and operation of Joalpe U.S.[14] Joalpe U.S. also hired Maria Movasseghi as an office employee, and hired Shahram and Maria's son, Jason.

18.     In 1997, Manuel Alves and Maria Movasseghi's father passed away.  Manuel Alves became CEO of Joalpe S.A. and managed and directed both Joalpe S.A. and Joalpe U.S. for approximately 13 years.[15]  During this time, Joalpe U.S. was successful and profitable. Joalpe S.A. manufactured and provided to Joalpe U.S. approximately 80% of the products distributed by Joalpe U.S.

19.     Manuel Alves claims that in 2006, he started the process of preparing a written Supply Contract (hereinafter "Supply Contract") which was "merely [intended to document] a pattern, practice and course of performance between [Joalpe S.A.] and Joalpe US that had been in existence and had been followed for many years."[16]  Manuel Alves claims that Joalpe S.A.'s attorney formulated the terms of the Supply Contract, and that it was discussed with Joalpe S.A.'s board of directors.[17]  On February 8, 2010, Manuel Alves signed a Supply Contract between Joalpe U.S. and Joalpe S.A. on behalf of Joalpe S.A., and Nancy Alves signed on behalf of Joalpe U.S.  Joalpe S.A. alleges that it did not know of the existence of the Supply Contract until after this lawsuit was filed, and alleges that the

---

[12] M. Alves Dep. p. 63.
[13] M. Movasseghi Dep. pp. 26-28, 48-49; Compl. ¶66.
[14] M. Movasseghi Dep. pp. 48-49.
[15] M. Alves Dep. pp. 40-44.
[16] *Id.* pp 145-150; M. Alves Aff. (3/8/13) ¶ 8.
[17] M. Alves Dep. pp. 150-151.

Supply Contract was "extraordinarily one-sided in favor of Joalpe U.S."[18] Joalpe U.S. owes Joalpe S.A. a significant balance for products provided to Joalpe U.S., and the two companies have not been able to reach acceptable terms for payment of the outstanding balance.

20.    In September 2010, Manuel Alves resigned as the Chairman of the Board of Joalpe S.A.[19]

21.    On December 9, 2010, Manuel Alves terminated Shahram and Jason Movasseghi.[20] Manuel Alves claims he terminated Shahram "for business reasons and in the best interests of Joalpe U.S." and that the decision "was not made out of any spite, malice, will or any animosity or hostility towards [the Movasseghis]."[21] Manuel Alves testified he terminated Shahram due to a drop in sales.[22]

22.    Joalpe S.A. immediately notified Manuel Alves that it opposed the company's action, believing it to stem from a personal dispute rather than legitimate business interests, and that it would like for the Movasseghis to be reinstated.[23] Joalpe U.S. denied this request. Additionally, as a result of Joalpe S.A.'s request to reinstate Shahram and Jason, Manuel Alves terminated Maria Movasseghi from Joalpe U.S.[24]

23.    Joalpe S.A. alleges that the terminations of Shahram and Jason Movasseghi, and the "legitimacy" of the Supply Contract entered into by Manuel Alves, "have resulted in an insurmountable rift between Manuel Alves and the rest of the family."[25]

---

[18] M. Movasseghi Aff. (8/16/11) ¶10; M. Movasseghi Aff. (3/7/13) ¶5; Compl. ¶ 33.
[19] M. Movasseghi Aff. (3/7/13) ¶4.
[20] M. Movasseghi Aff. (3/7/13) ¶7; M. Alves Dep. pp. 111-112.
[21] M. Alves Aff. (3/8/13) ¶¶ 6-7.
[22] M. Alves Dep. pp. 113, 115.
[23] Id. at 125; M. Movasseghi Aff. (3/7/13) ¶ 7.
[24] M. Alves Dep. pp. 133.
[25] M. Movasseghi Aff. (3/7/13) ¶ 7.

24.     Joalpe S.A. has refused to supply products to Joalpe U.S. since December 2010.  Joalpe S.A. has stopped supplying products because Joalpe U.S. has not paid the outstanding balance and in order to force Joalpe U.S. to permit Joalpe S.A. to participate in Joalpe U.S.' management.[26]  Joalpe S.A.'s refusal to supply products has resulted in "decreased existing business and new business opportunities, and loss of sales and profits for Joalpe U.S."[27]

25.     Joalpe S.A. alleges that there is "an irreconcilable deadlock between those in control of Joalpe U.S." that has "frustrated [Joalpe S.A.]'s substantial reasonable expectations."[28] Joalpe S.A. contends it is "reasonably necessary for the protections of the rights and interests of [Joalpe S.A.] to dissolve and liquidate Joalpe U.S.[29]

26.     Despite the loss of business, Joalpe U.S. alleges that it remains a viable business with opportunity to grow.  Joalpe U.S. seeks to purchase Joalpe S.A.'s shares in Joalpe U.S. in order to continue its business and preserve the jobs of Joalpe U.S.' employees.[30]

<u>Joalpe U.S. Motion to Amend Answer</u>

27.     Joalpe U.S. filed its Motion for Leave to Amend Answer on April 3, 2013, after all three Motions for Summary Judgment had been filed, more than a month after the close of discovery, and almost a month after the deadline for filing dispositive motions.[31] The motion states that Joalpe U.S. seeks to file this amendment "in connection with its Motion for Summary Judgment" in which it seeks summary judgment in Joalpe S.A.'s favor

---

[26] M. Movasseghi Dep. pp. 40, 47; M. Movasseghi Aff. (8/16/11) ¶ 6.
[27] M. Alves Aff. (3/8/13) ¶ 10; M. Alves Aff. (12/10/12) ¶¶ 4-6.
[28] Compl. ¶¶42, 45.
[29] Id. ¶47.
[30] M. Alves Aff. (12/10/12) ¶¶ 8-10; M. Alves Aff. (8/23/13) ¶ 14.
[31] Order Amending CMO, Feb. 12, 2013.

as to Joalpe S.A.'s claim for judicial dissolution.[32] The Motion states that "Joalpe U.S. now believes and understands that the undisputed facts before this Court show that [Joalpe S.A.] . . . had reasonable expectations in the management, employment, and operations of [Joalpe U.S.], that those reasonable expectations have been frustrated, that its rights or interests in [Joalpe U.S.] are in need of protection, and that dissolution under N.C.G.S. § 55-14-30(2)(ii) is appropriate to protect its rights."[33]

28.     Joalpe S.A. opposes the Motion, arguing that the amendment is untimely, unduly delayed, in bad faith, and would result in undue prejudice to the Joalpe S.A.[34]

29.     The proposed amendment would revise eleven paragraphs of Joalpe U.S.'s answer to now admit, instead of deny, Joalpe S.A.'s allegations that its reasonable expectations of continued involvement in the management and operations of Joalpe U.S. were frustrated by the Defendants Alves, and that the frustration of those expectations merits dissolution of Joalpe U.S. under G.S. § 55-14-30(2)(ii).  The amendment further contends that the equities of the situation weigh in favor of allowing Joalpe U.S. to purchase Joalpe S.A.'s shares under G.S. § 55-14-31(d).

30.     Rule 15 of the North Carolina Rules of Civil Procedure provides that "leave shall be freely given" to amend a pleading "when justice so requires." This has been interpreted to mean that an amendment should be "freely allowed unless some material prejudice to the other party is demonstrated." *Mauney v. Morris*, 316 N.C. 67, 72 (1986). A court may deny a motion to amend for, *inter alia*, undue delay, bad faith, undue prejudice, futility, and failure to cure through previous amendments. *See, e.g.*, *Martin v. Hare*, 78

---

[32] Motion for Leave to Amend ¶ 9.
[33] *Id.* ¶ 8.
[34] Pls. & Third-Party Defs.' Resp. to Def. Joalpe U.S. Mot. For Leave to Amend Ans., Aff. Defs., Countercl. & Third-Party Compl. 5-9.

N.C. App. 358, 361 (1985). Ultimately, whether to allow an amendment rests in the trial judge's discretion. *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282 (1991).

31.     At a minimum, Joalpe U.S. has unduly delayed in bringing this motion to amend and now seeks to make an eleventh-hour amendment in hopes of defeating Joalpe S.A.'s motion for summary judgment.  The motion comes nearly two years after Joalpe U.S. filed its answer to Joalpe S.A.'s Second Amended Complaint, and nearly a month after Joalpe S.A. filed its motion for summary judgment.  In addition, there is at least some suggestion that the amendments are made in bad faith.  For example, despite Manuel Alves' repeated, sworn testimony that he terminated Shahram Movasseghi for legitimate business reasons,[35] Joalpe U.S. now seeks to amend the denial in its original answer to admit that Manuel Alves terminated Shahram Movasseghi because of a family dispute between Manuel Alves and Maria Movasseghi.

32.     Based upon the foregoing analysis, the Court finds that Joalpe U.S.'s Motion for Leave to Amend Answer should be DENIED.[36]

### Joalpe U.S.' and Joalpe S.A.'s Motions for Summary Judgment

33.     Both Joalpe U.S. and Joalpe S.A. seek summary judgment on Joalpe S.A.'s claim for judicial dissolution of Joalpe U.S. under G.S. § 55-14-30(2), *et seq.* Both parties argue that the undisputed facts establish that Joalpe S.A. is entitled to judicial dissolution as a matter of law.  The parties differ only as to under which "prong" of G.S. § 55-14-30(2) dissolution should be granted, and whether the appropriate remedy is to liquidate Joalpe U.S. or to permit Joalpe U.S. to purchase Joalpe S.A.'s shares.

---

[35] M. Alves Aff. (3/8/13) ¶¶ 6-7; M. Alves Dep. pp. 113, 115, 170-171.
[36] For the reasons set forth *infra*, the denial of Joalpe S.A.'s motion to amend does not impact the Court's ability to consider dissolution under G.S. § 55-14-30(2)(ii).

34.     As a preliminary matter, the Court questions Joalpe U.S.' right to move for summary judgment on Joalpe S.A.'s claim for dissolution.  For purposes of that claim, Joalpe U.S. is the "defending party," and not the "claimant."  Rule 56 of the North Carolina Rules of Civil Procedure expressly states that a party may move for summary judgment "in his favor." As written, the rule does not provide for the defending party to seek summary judgment in the claimant's favor.[37]

35.     The Court is unable to find any North Carolina case law addressing a defendant's right to move for summary judgment *against* itself on a plaintiff's claim. Nevertheless, the Court concludes that the pleadings and materials filed by Joalpe S.A. and Joalpe U.S. have placed the propriety of judicial dissolution under G.S. § 55-14-30(2) and the appropriate dissolution remedy squarely at issue in this case.[38]  Accordingly, the Court treats Joalpe U.S.'s motion for summary judgment as a concession that Joalpe S.A. is entitled to dissolution under G.S. § 55-14-30(2), and with regard to the threshold issue of whether Joalpe U.S. should be judicially dissolved, Joalpe S.A.'s motion for summary judgment should GRANTED. The Court will proceed to determine under which part or parts of G.S. § 55-14-30(2) Joalpe U.S. should be dissolved, and the appropriate judicial remedy to be imposed based upon such determination.

36.     G.S. § 55-14-30(2) permits a superior court to dissolve a corporation if, *inter alia*, a shareholder establishes that "(i) the directors or those in control of the corporation are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being

---

[37] *Compare* Federal Rule of Civil Procedure 56, which provides that "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."

[38] Compl. ¶¶41-42, 45-47; Joalpe U.S. Countercl., ¶50 and prayer for relief; M. Alves Aff. (12/10/12) ¶10.

suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders' advantage generally because of the deadlock; (ii) liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder; [or] (iii) the shareholders are deadlocked in voting power and have failed, for a period that includes at least at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired."[39]

37.     Joalpe S.A.'s Complaint alleges facts that would support judicial dissolution only under G.S. § 55-14-30(2)(i) and (ii), but not (iii). Although the Complaint uses to the word "deadlock", there are no allegations regarding the failure to elect directors. Rather, Joalpe S.A. raises the issue of deadlock in the election of directors for the first time in its motion for summary judgment. Although Joalpe S.A. did not specifically discuss shareholder deadlock in the Complaint, the Complaint referenced the entirety of G.S. § 55-14-30, and was sufficient to put Defendants on notice regarding claims for dissolution under any section of that statute. Accordingly, the Court will consider first whether dissolution under G.S. § 55-14-30(2)(iii) is appropriate, and then analyze dissolution pursuant to parts (i) and (ii).

### a. Judicial Dissolution Pursuant to G.S. § 55-14-30(2)(iii).

38.     G.S. § 55-14-30(2)(iii) allows for judicial dissolution of a corporation in the event that "the shareholders are deadlocked in voting power and have failed for a period of at least two consecutive annual meeting dates to elect successors for directors *whose terms have expired*." (emphasis added). Joalpe U.S.' corporate by-laws provide that directors "shall be elected at the annual meeting of shareholders", and that "[e]ach director shall hold

_____

[39] The statute also provides that a corporation may be dissolved if its assets are being wasted or if a written agreement provides for dissolution under specific circumstances. Neither of these provisions are applicable in this case.

office for a period of one year, or until his death, resignation, retirement, removal, disqualification, or his successor is elected and qualifies."[40]  It is undisputed that Manuel Alves and Nancy Alves were at all relevant times directors of Joalpe U.S. and that Joalpe U.S. did not hold annual shareholder meetings from 2004 – 2012.  It also is undisputed that Joalpe S.A. called a substitute annual shareholder meeting in December 2012, and that at the meeting the shareholders deadlocked in their attempt to elect new directors.  There is no evidence in the record, however, that the shareholders deadlocked with regard to electing new directors either before or since December 2012.  This makes it impossible for the Court to find that the facts are undisputed regarding a deadlock that would satisfy G.S. § 55-14-30(2)(iii), and precludes summary judgment for Joalpe S.A. on this issue.

39.     In addition, there is a question as to whether the Manuel and Nancy Alves' terms as directors had expired so as to make G.S. § 55-14-30(2)(iii) applicable.  Defendant Joalpe U.S. argues that Joalpe U.S.' by-laws provide that a director's term continues until the director's "successor is elected and qualified" and, since successors have never been elected to replace Manuel and Nancy Alves, their terms as directors have never expired. Conversely, Joalpe S.A.'s position is that a director's term is limited to one year.[41]

40.     The meaning of the language used in the Joalpe U.S. by-laws to define the duration of a director's term is not clear and unambiguous.  Both parties present what is at least a colorable interpretation of the meaning of the language.  Joalpe U.S.' interpretation, however, appears to ignore the language that directors "shall hold office for a period of one year" and "shall be elected at the annual meeting."  On the other hand, accepting Joalpe S.A.'s interpretation would suggest that Joalpe U.S. ceased having any active directors one year after the last election of directors, which occurred, at the latest, in 2003.  This flies in

[40] M. Movasseghi Aff. (3/7/13), Exh. B.
[41] Id. ¶ 8.

the face of its admission that Manuel and Nancy Alves were "at all times" directors of Joalpe U.S. Accordingly, there is a dispute of fact as to the intended meaning of this by-law provision, which would preclude summary judgment in Joalpe S.A.'s favor on this issue.

41. For the foregoing reasons, the Court concludes that summary judgment should be DENIED under G.S. § 55-14-30(2)(iii).

### b. Judicial Dissolution pursuant to G.S. § 55-14-30(2)(i).

42. G.S. § 55-14-30(2)(i) allows a court to grant a shareholder's request for dissolution if (1) the directors or those controlling the corporation are deadlocked in the management of the corporation's affairs, (2) the shareholders are unable to break the deadlock, and (3) irreparable injury to the corporation is threatened or being suffered, or corporate affairs can no longer be conducted to the advantage of the shareholders because of the deadlock. All three of these elements must be present for dissolution to be granted under this prong. *Foster v. Foster Farms*, 112 N.C. App. 700, 706 (1993); *Bradley v. Bradley*, 206 N.C. App. 249, 256 (2010).

43. It is undisputed that at all times relevant to this matter, Joalpe U.S. has been "control[ed]" by Manuel Alves and Nancy Alves acting as the corporation's officers and directors.[42] Despite Joalpe S.A.'s displeasure at being removed from the management of the corporation, under the control of Defendants Alves, Joalpe U.S. has continued to function as an ongoing concern with employees, customers, and in some years, profits.[43] There is no allegation of deadlock between the Defendants Alves; in fact, Plaintiff alleges that the Defendants Alves have acted in concert.[44] The Court finds that it is undisputed that there is not a deadlock between the directors or officers of Joalpe U.S. that has prevented them

---

[42] Compl. ¶¶ 10-11.
[43] M. Alves Aff. (12/10/12) ¶¶ 7-8; M. Gotsch Aff. ¶¶ 7, 10; Joalpe U.S. 2010, 2011, 2012, and January – March, 2013 P&L Statements filed under seal 4/24/13.
[44] Compl. ¶ 9.

from managing corporate affairs, and that judicial dissolution under G.S. § 55-14-30(2)(i) is not appropriate. For the foregoing reasons, the Court concludes that summary judgment should be DENIED under G.S. § 55-14-30(2)(i).

### c. Judicial Dissolution Pursuant to G.S. § 55-14-30(2)(ii).

44.     Under G.S. § 55-14-30(2)(ii), a court may dissolve a corporation if dissolution is reasonably necessary to protect the rights or interests of the complaining shareholder. The seminal North Carolina case analyzing judicial dissolution of closely held corporations due to frustration of shareholder expectations is *Meiselman v. Meiselman*, 309 N.C. 279 (1983).[45]  The *Meiselman* court held that dissolution under this prong may be appropriate if the court finds that the shareholder's "reasonable expectations"—that is, those held in good faith by the complaining shareholder and "embodied in understandings" among the other shareholders—have been violated, such that some sort of liquidation need be granted to protect those interests. *Id.* at 298-300. In *Foster v. Foster Farms*, 112 N.C. App. at 710, the North Carolina Court of Appeals declared that the "guiding principles" of *Meiselman* applied to a closely held corporation where the plaintiff and defendant each owned 50% of the stock.  In determining whether dissolution is appropriate under § 55-14-30(2)(ii), a court must (1) identify the "rights or interests" that the complaining shareholder had in the corporation, including the shareholder's "reasonable expectations," (2) determine that these expectations have been frustrated without fault of the shareholder, and (3) evaluate whether the shareholder is entitled to some type of equitable relief under these circumstances. *Id.* at 709; *Royals v. Piedmont Elect. Repair Co.*, 137 N.C. App. 700, 705 (2000) (citing *Meiselman*, 309 N.C. 279).

---

[45] Though *Meiselman* was decided under the predecessor statute, G.S. § 55-14-30(2)(ii) is identical to the provision in the *Meiselman* statute. *Foster v. Foster Farms*, 112 N.C. App. at 709.

45. It is undisputed that Joalpe S.A. reasonably expected to be involved in the management or operations of Joalpe U.S., that Joalpe S.A.'s expectations were frustrated by the actions of the Defendants Alves, and that Joalpe S.A. was not at fault for the frustration of its reasonable expectation. Accordingly, the Court concludes that dissolution would be appropriate under G.S. § 55-14-30(2)(ii).

46. Even though undisputed facts establish that dissolution is available in this case, the Court still must apply its discretion to determine whether Joalpe U.S. should be dissolved under the particular circumstances of this case.[46]

47. In *Foster*, the North Carolina Court of Appeals reiterated the standard articulated in *Meiselman*, that a trial court must examine the equities of dissolution by analyzing the relative benefit and injury that dissolution would create for all shareholders. *Foster*, 112 N.C. App. at 711 (citing *Meiselman*, 309 N.C. at 297). Similarly, this Court in *Royals v. Piedmont Elec. Repair Co.*, 1999 NCBC 1 (N.C. Super. Ct. Mar. 3, 1999), *aff'd*, 137 N.C. App. 700 (2000), listed specific factors for consideration in reaching its decision regarding dissolution. These factors include the parties' original expectations, the event or action that intervened in these expectations, destruction of original expectations, the status of minority shareholders, the nature of the business, the impact on employees and others, the relationship between the parties, and recent corporate actions. *Id.* at ¶¶ 40-47. The Court already has reviewed the facts regarding Joalpe S.A.'s original expectations of ongoing participation in the management and operations of Joalpe U.S., the actions that led to the destruction of those expectations, and the nature of Joalpe U.S.' business. The Court

---

[46] Robinson on North Carolina Corporations (Matthew Bender), §28.10 ("dissolution is discretionary with the court, so a plaintiff-shareholder will not necessarily establish the right to dissolution merely by proving a set of circumstances within one of the categories specified [under G.S. § 55-14-30]").

finds that all of these factors weigh in favor of judicial dissolution. The court will now analyze the remaining *Royals* factors.

48.    With regard to the relationship between the parties, it is undisputed that there is a bitter family dispute between the Movasseghis and Ms. Pereira, on the one hand, and Defendants Alves, on the other.[47] The dispute included a physical altercation between Maria Movasseghi and Manuel Alves in September 2010.[48] The family dispute, and particularly the termination of Shahram Movasseghi, is one reason that Joalpe S.A. has refused to provide products to Joalpe U.S. It is clear from the record that the parties are at an irreconcilable stand-off making it impossible to co-exist as 50% owners of Joalpe U.S. *Foster*, 112 N.C. App. at 711 ("If [the court] leave[s] [the parties] together and den[ies] the motion to liquidate, [the parties] will fight each other and destroy the corporation."). This factor also favors dissolution.

49.    The evidence also established that Joalpe U.S. is a viable ongoing business. As in *Royals v. Piedmont Elect. Repair Co.*, 1999 NCBC 1, dissolution of this company would result in the destruction of an active company, thereby resulting in job loss for several innocent third parties, in addition to disrupting business for customers of Defendant Joalpe U.S.[49] *Royals*, 1999 NCBC 1 at ¶45. Further, the Court believes that "[t]he liquidation value of the business would be less than the value of the business if sold as an ongoing concern." *Id.* ¶ 44.

50.    Finally, the equities favor granting Joalpe S.A.'s request for dissolution. Joalpe S.A. has been unable to participate in, and been frozen out of, Joalpe U.S.'s management and operations since December 2010. Joalpe U.S. has either refused or failed

---

[47] M. Movasseghi Aff. (3/7/13) ¶ 6.
[48] *Id.*
[49] *See generally* Aff. Of M. Gotsch.

to hold shareholders meetings or substitute meetings for purpose of transacting shareholder business. Accordingly, the Court finds that the only means of protecting Joalpe S.A.'s shareholder rights is to dissolve Joalpe U.S.

51. Based upon the foregoing analysis, the Court concludes that dissolution is appropriate under G.S. § 55-14-30(2)(ii), and the Joalpe U.S. Motion should be GRANTED under this prong.

### d. Corporate Buyout Under G.S. § 55-14-31(d).

52. In the event that a court finds corporate dissolution appropriate to protect the rights or interests of the complaining shareholder, G.S. §§ 55-14-30(2)(ii), the corporation may elect to purchase the complaining shareholder's shares at fair value, to be determined according to standards set by the court. G.S. § 55-14-31(d). In the event that a corporation elects to purchase the shares of the complaining shareholder for fair value, the court shall not order dissolution of the corporation. *Id.*; *High Point Bank & Trust Co. v. Sapona Mfg. Co., Inc.*, 212 N.C. App. 148, 152 (2011).

53. In this case, Joalpe U.S. has expressed its desire to purchase the shares currently owned by Joalpe S.A. Joalpe U.S. contends that the fact that it continues to be a viable business, and that liquidation would result in loss of employment for its employees and disruption to its remaining customers, support a buyout by Joalpe U.S. over liquidation.[50] As discussed *supra*, the Court perceives some significant equitable concerns with liquidating Joalpe U.S.

54. In *Royals,* this Court found that dissolution was reasonably necessary and equitable to protect the rights and interests of the complaining minority shareholder. 1999 NCBC 1, ¶ 49. The court then devised an appropriate method under the facts of that case

---

[50] Joalpe Int'l Mem. Supp. Mot. Summ. J. 20-22.

for calculating the fair value of the dissenting shares for purposes of purchase by the corporation under G.S. § 55-14-31(d), noting that the statute does not define "fair value" or provide any specific framework for calculating such value. ¶¶ 50-61.

55.     *Royals*, however, differs from the case at hand because there was a majority shareholder with 51% of the company's shares. Here, Joalpe S.A. owns 50% of the shares in Joalpe U.S., meaning that it is not as clear that the non-complaining shares (owned by Defendants Alves) possess the authority to execute Joalpe U.S.'s purchase of Plaintiff's shares. The Court has not been able to find any North Carolina precedent addressing this issue.

56.     In this case, however, it seems relatively clear that Defendants Alves, acting as the majority of the Board of Directors, would have the authority to direct Joalpe U.S. to purchase the shares of Joalpe S.A. North Carolina's Business Corporation Act vests directors with broad authority to exercise "[a]ll corporate powers" and to manage the "business and affairs" of the corporation. G.S. §55-8-01(b). In addition, Joalpe U.S.' corporate by-laws provide that the "business and affairs of the corporation shall be managed by the Board of Directors."[51] They further provide that "a majority of the directors fixed by these By-Laws shall constitute a quorum for the transaction of business" and that "the act of the majority of the directors present at a [board] meeting at which a quorum is present shall be the act of the Board of Directors."[52] It is undisputed that the by-laws provide for a minimum of three directors, and that Manuel and Nancy Alves hold two, or the majority, of the directors seats. This would enable Joalpe U.S., acting through its board of directors, to authorize the purchase of Joalpe S.A.'s shares.

---

[51] M. Movasseghi Aff. (3/7/13), Exh. B, Art. III, § 1.
[52] *Id.* Art. IV, §§ 5-6.

57.     The Court has determined that judicial dissolution pursuant to G.S. § 55-14-30(2)(ii) is necessary under the facts present in this case.  As set out below, Joalpe U.S. will be provided an opportunity to elect to purchase the shares of Joalpe S.A. pursuant to G.S. § 55-14-31(d).  In the event that Joalpe U.S., acting through the mechanisms provided in its by-laws, elects to purchase the shares owned by Joalpe S.A., the Court will enter an order providing a method similar to that in *Royals* by which the fair value of the Joalpe S.A. shares will be calculated.  In the event that Joalpe U.S. elects not to purchase the shares owned by Joalpe S.A., the Court will issue an order providing for liquidation of Joalpe U.S.

<u>Defendants Alves' Motion for Summary Judgment</u>

58.     Finally, Defendants Alves move for summary judgment on Joalpe S.A.'s Claims Five, Breach of Fiduciary Duty and Claim Six, violation of the NCUDTPA.  The NCUDTPA claims are based on the same allegations as the breach of fiduciary duty claims.[53]  Although Joalpe S.A. alleges that the Defendants Alves breached their fiduciary duties to Joalpe S.A. as a shareholders in a number of separate ways, they rely primarily on (1) Manuel Alves' termination of Shahram Movasseghi, and (2) the Defendants Alves entering into the "one sided" Supply Contract.[54]

59.     Directors of a corporation have a fiduciary duty to act in good faith, with the care that a prudent person would ordinarily exercise in that position, and in a matter that the director reasonably believes to be in the best interests of the corporation. G.S. §§ 55-8-30 and 55-8-42. This duty, however, is owed to the corporation itself, and not to individual shareholders, and a cause of action for breach of these duties is the corporation's claim. *See Green v. Freeman*, 367 N.C. 136, 141 (2013).  Plaintiff does not allege that it is bringing its

---

[53] Compl. ¶¶ 71-72. A breach of fiduciary duty can also support a claim for violation of the NCUDTPA. *See Sara Lee Corp. v. Carter*, 351 N.C. 27 (1999).
[54] Pl.'s Resp. Alves Def. Mot. Summ. J. 2-10.

claims against the Defendants Alves derivatively on behalf of Joalpe U.S. or that it complied with the statutory requirements for bringing a derivative action.[55] Accordingly, Plaintiff pursues the claims as a shareholder.

60.     Shareholders are generally prohibited from bringing a direct suit against a director for harms incurred to the corporation, but may bring a derivative action to enforce the rights of the corporation in those cases. *Green v. Freeman*, 367 N.C. at 141-42 (2013); *Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 658 (1997); *Fulton v. Talbert*, 255 N.C. 183, 185 (1961).  This principle has become known as the *Barger* rule.  There are, however, two exceptions to the *Barger* rule:

> [A] shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself.

*Regions Bank v. Reg'l Prop. Dev. Corp.*, 2008 NCBC 8, ¶ 45 (N.C. Super. Ct. Apr. 21, 2008) (quoting *Barger*, 346 N.C. at 658-59).

61.     Joalpe S.A. alleges that Manuel Alves owed it a special duty with regard to the continued employment of Shahram Movasseghi.  Joalpe S.A. contends that part of the motivation for Joalpe S.A. becoming a shareholder in Joalpe U.S. was its understanding that its interests would be protected by having Shahram employed by Joalpe U.S.[56]  Joalpe S.A. alleges that Manuel Alves breached this special duty to Joalpe S.A. by terminating Shahram.  Manuel Alves does not appear to expressly dispute Joalpe S.A.'s allegation that he made a specific promise to keep Shahram employed. Manuel Alves contends that he had

---

[55] G.S.55-7-40, et. seq.
[56] M. Movasseghi Dep. pp. 26-28, 48-49; Compl. ¶66; indeed, as discussed above, Joalpe U.S. now seeks to file an Amended Answer in order to admit that Manuel Alves termination of Shahram frustrated Plaintiff's expectations as a shareholder.

full authority to terminate Shahram, and that he did so for legitimate, business related reasons and in the best interests of Joalpe US.[57]

62. Joalpe S.A. also alleges that Manuel Alves breached his duty as a director and officer of Joalpe US by entering into the Supply Contract. Joalpe S.A. contends that it would not have agreed to the terms of that contract, and claimed that Joalpe S.A. had no record of the Supply Contract in its corporate records.[58] Manuel Alves created the contract, signed it on behalf of Joalpe S.A., and directed Nancy Alves to sign as an officer of Joalpe U.S.[59] Manuel Alves claims he discussed the Supply Contract with Joalpe S.A.'s board of directors prior to entering into the agreement.[60] The contract specifically included credit terms that allowed Joalpe U.S. to carry a large account balance with Joalpe U.S. for products supplied by Joalpe S.A. Joalpe U.S. had a large outstanding balance on its purchases with Joalpe S.A. and has not paid it off. Joalpe S.A. alleges it has suffered damages as vendor doing business with Joalpe U.S., separate and apart from any damages it suffered as a shareholder, because of the Supply Contract.

63. The Court has reviewed the record and finds that there are disputed issues of material fact that make it inappropriate to grant the Alves motion for summary judgment on Joalpe S.A.'s claims for breach of fiduciary duty and unfair and deceptive trade practices. Joalpe S.A. has shown sufficient facts from which a trier of fact could conclude that Manuel Alves owed it a special duty as a shareholder with regard to Shahram's continued employment, separate from any duty that Manuel Alves owed to Joalpe U.S. Similarly, there are facts that could support a conclusion that Joalpe S.A. suffered a separate and distinct injury arising from its vendor relationship with Joalpe U.S. because of

---

[57] M. Alves Aff. (3/8/13) ¶¶4-7; M. Alves Dep. pp. 113, 115, 170-171.
[58] M. Movasseghi Aff. (8/16/11) ¶10; M. Movasseghi Aff. (3/7/13) ¶5.
[59] M. Alves Dep. pp. 145-151, 158-161.
[60] *Id.* at 149-150.

the Supply Contract. Accordingly, the Alves' motion for summary judgment with regard to Joalpe S.A.'s Claim Five for Breach of Fiduciary Duty and Claim Six for violation of the NCUDTPA should be DENIED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

64.     Defendant Joalpe U.S.'s Motion for Leave to Amend Answer is DENIED.

65.     Plaintiff's Motion for Partial Summary Judgment as to Claim One is GRANTED under G.S. § 55-14-30(2)(ii).

66.     Joalpe U.S.'s Motion for Partial Summary Judgment was not properly brought before the Court, and in light of the Court's order, that Motion is now MOOT.

67.     Defendant Joalpe U.S. hereby is DISSOLVED.

68.     Within thirty days of the date of this Opinion and Order, Joalpe U.S. shall file a notice of intent to purchase Plaintiff's shares in lieu of dissolution, as permitted by G.S. § 55-14-31(d). This notice shall be accompanied with the identity, curriculum vitae, and any other relevant information of a proposed appraiser for purposes of determining the fair value of Plaintiff's shares.

69.     If such notice is filed by Joalpe U.S., Plaintiff shall have thirty days from the date that Joalpe U.S. files such notice to respond with its own proposed appraiser, curriculum vitae, and any other relevant information.

70.     If such notice is not filed by Joalpe U.S. within the allotted thirty days, the Court will issue a notice of hearing for the parties to appear before the Court for purposes implementing a procedure for liquidating and winding up the affairs of Joalpe U.S.

71.     Defendants Alves' Motion for Summary Judgment is DENIED.

72.     This Amended Opinion and Order SUPERSEDES this Court's Opinion and Order on Motions for Summary Judgment issued in this matter on January 23, 2015, and that Opinion and Order hereby is WITHDRAWN.

SO ORDERED, this the 27th of January, 2015.